1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CYMEYON HILL,                          No.  2:21-cv-1727 KJN P

12                  Plaintiff,

13         v.                                ORDER AND

14    DR. PRASAD, et al.,                    FINDINGS & RECOMMENDATIONS

15                  Defendants.

16

17         Plaintiff is a civil detainee, proceeding pro se and in forma pauperis.  Defendants' fully

18    briefed motion for summary judgment is before the court.  As discussed below, it is

19    recommended that the motion be granted.

20    Plaintiff's Verified Complaint

21         Plaintiff alleges that on September 18, 2021, while housed at the California State Prison,

22    Sacramento ("CSP-SAC"), defendants Dr. Prasad, Officer C. Tapia, and Officer Read were

23    deliberately indifferent to plaintiff's serious medical needs while he was in his cell, by refusing or

24    failing to summon medical assistance for plaintiff, who was having severe chest pains, vomiting,

25    and difficulty breathing, despite plaintiff continuing to kick and scream man down.  (ECF No. 1.)

26    Legal Standards for Summary Judgment

27         Summary judgment is appropriate when it is demonstrated that the standard set forth in

28    Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

                                             1

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need

only prove that there is an absence of evidence to support the non-moving party's case." Nursing

Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory

Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial

burden of production may rely on a showing that a party who does have the trial burden cannot

produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to

the opposing party to establish that a genuine issue as to any material fact actually exists. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

establish the existence of such a factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material in support of its contention that such a

dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

2

1  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

2  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

3  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

4  (9th Cir. 1987).

5        In the endeavor to establish the existence of a factual dispute, the opposing party need not

6  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

7  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

8  trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

9  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

10 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

11 amendments).

12        In resolving a summary judgment motion, the court examines the pleadings, depositions,

13 answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

14 Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

15 255.  All reasonable inferences that may be drawn from the facts placed before the court must be

16 drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

17 are not drawn out of the air, and it is the opposing party's obligation to produce a factual

18 predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

19 Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

20 demonstrate a genuine issue, the opposing party "must do more than simply show that there is

21 some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not

22 lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

23 Matsushita, 475 U.S. at 586 (citation omitted).

24        By notice filed March 9, 2023, plaintiff was advised of the requirements for opposing a

25 motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

26 Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th

27 Cir. 1988).

28 ////

Undisputed Facts[1] ("UDF")

1.  At all times relevant to this action, plaintiff was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") as a civil detainee at California State Prison, Sacramento ("CSP-SAC").

2.  At all times relevant herein, defendant Dr. Prasad was employed as a clinical psychologist, and defendants Tapia and Read were employed as correctional officers; all three defendants were employed at CSP-SAC.

3.  On August 27, 2021, plaintiff was transferred from Salinas Valley State Prison ("SVSP") to CSP-SAC.  Upon plaintiff's arrival, an initial health screening was performed by nonparty registered nurse ("RN") Antony.

4.  RN Antony documented, among other things, that plaintiff was diagnosed with a mental health illness and was part of the mental health delivery system.  Accordingly, RN Antony submitted a referral for plaintiff to be seen by a mental health professional at CSP-SAC within five calendar days.  The RN did not note any concerns of chest pain, breathing, vomiting or nausea.

5.  On August 28, 2021, Dr. Prasad performed a suicide risk evaluation of plaintiff.  Dr. Prasad reviewed and summarized plaintiff's prior mental health records and developed a treatment plan for plaintiff's mental health concerns.  Plaintiff did not report having any chest pains or shortness of breath during the appointment.

6.  On August 30, 2021, plaintiff was seen by nonparty Post-Doc Intern Patel.  Patel noted that plaintiff was transferred to CDCR for treatment under conditions with better custodial security, but no concerns regarding chest pain or shortness of breath were noted.

7.  On September 6, 2021, plaintiff submitted a Health Care Services Request Form ("CDCR 7362").  Plaintiff requested a medical exemption from receiving the COVID-19 vaccine.
////

---

[1]  For purposes of summary judgment, the undersigned finds these facts are undisputed.  Where plaintiff failed to properly address defendant's assertion of fact as required, this Court considers the fact undisputed.  See Fed. R. Civ. P. 56(e)(2).

This request was received and reviewed on September 8, 2021, by nursing staff who scheduled a follow-up appointment for plaintiff's request.

8. On September 7, 2021, nonparty Post-Doc Intern Patel completed a Mental Health Primary Care Assessment on plaintiff and determined that plaintiff was presenting impulsive behavior, agitation and delusional thinking. Plaintiff did not report any other health concerns.

9. On September 14, 2021, plaintiff saw nonparty Psychiatrist Dr. Jackson, and Dr. Jackson noted that plaintiff had "limited insight into his illness." Dr. Jackson's treatment plan included continuing plaintiff's current medication regimen, supportive therapy and psychoeducation. Plaintiff did not report any other health concerns.

10. On September 17, 2021, plaintiff saw nonparty Clinical Psychology Intern Egan. Plaintiff denied any new issues or concerns regarding his mental health and appeared to focus most of his concern on custody-related factors including housing, institution placement and COVID screening. Plaintiff did not report any concerns with his health, including chest pains, shortness of breath, vomiting, or nausea.

11. On September 18, 2021, plaintiff was housed in the Alpha Facility at CSP-SAC. On that same day, Dr. Prasad was conducting in-person crisis assessments of nonparty inmates who were on suicide watch in the Alpha Facility. Every crisis intervention includes an evaluation of the suicidal inmate patient to prevent the potential risk of committing suicide. It is a highly stressful evaluation because of the life and death situation involving the patient.

12. On September 18, 2021, Officer Tapia escorted Dr. Prasad around the facility as she evaluated such nonparty inmates.

13. On September 18, 2021, Officer Read was assigned to the control-booth for the building. Read declares he is not allowed to leave the control booth unless relieved by another officer, and on September 18, 2021, Read was "positioned approximately 50 feet from plaintiff's cell." (ECF No. 32-7 at 2.)

14. After completing the crisis assessments of those inmates, Dr. Prasad and Officer Tapia exited the Alpha Facility. While exiting the facility, Dr. Prasad heard incomprehensible

////

5

shouting from inmates in various prison cells. She notified a nonparty custody staff member about the shouting she heard and asked him to check on the inmates.

15. All three defendants deny they spoke with plaintiff about any alleged medical needs on September 18, 2021, and deny they heard plaintiff say he was experiencing a serious medical issue. Plaintiff declares that on September 18, 2021, he spoke with defendants Prasad and Read and alerted them to his symptoms.

16. Plaintiff admits that he never had a conversation with Officer Tapia about his alleged medical concerns. (Pl.'s Dep. 29.) Rather, plaintiff claims Tapia was present when plaintiff informed defendant Prasad, and defendant Tapia "heard the whole thing." (Pl.'s Dep. at 29.) Defendant Tapia denies observing defendant Prasad discuss any medical concerns with plaintiff on September 18, 2021, or on any other date. (ECF No. 32-8 at 2.)

17. Plaintiff did not submit a health care request form 7362 on September 18, 2021, or later, to report such symptoms and request medical assistance. Subsequently, through January 27, 2023, plaintiff did not require treatment for any complaints of chest pain, difficulty breathing, nausea or vomiting.

18. On September 20, 2021, plaintiff was seen by Clinical Psychology Intern Egan for a mental health follow-up. Plaintiff "demonstrate[d] odd behavior" related to various conspiracy theories. Plaintiff did not tell Egan about experiencing severe chest pain and difficulty breathing two days prior. Plaintiff did not mention anything about defendants ignoring any of plaintiff's requests for medical assistance on September 18, 2021.

19. On the morning of September 22, 2021, plaintiff was seen by nonparty RN Joseph in response to plaintiff's CDCR 7362 request for a medical exemption from receiving the COVID-19 vaccine. RN Joseph noted that plaintiff requested the exemption because he was taken to a hospital with a heart condition in the past. RN Joseph physically examined plaintiff and charted that plaintiff showed no signs of cardiovascular distress, and plaintiff denied having chest pain, heart palpitations, shortness of breath, dizziness or lightheadedness.

20. On the afternoon of September 22, 2021, nonparty RN Pakhomov documented that plaintiff had reported in Health Care Grievance Form (CDCR 602) SAC-SC21000119 that he

experienced chest pain on September 18, 2021.  RN Pakhomov contacted RN Joseph who reported that plaintiff had no urgent or emergent issues when plaintiff was seen earlier that morning.

21.  There is no documentation in plaintiff's medical records that he was seen by medical or mental health staff for any reasons on September 18, 2021, including for any complaints of chest pain, difficulty breathing, nausea or vomiting.

22.  Plaintiff appeared to have been well enough on September 18, 2021, to complete CDCR 602 Grievance SAC-SC-21000119, and to prepare his original complaint for this matter, which he executed on September 18, 2021, signing it "Jack Rabbit Patriot."

23.  There is no medical evidence that plaintiff had a serious medical need on September 18, 2021.

24.  On September 22, 2021, nonparty Maryse Joseph, an RN, charted that there is "no heart condition noted in [plaintiff's] chart."  (ECF No. 32-5 at 51.)

Legal Standards

Section 1983 allows a private citizen to sue for the deprivation of a right secured by federal law.  See 42 U.S.C. § 1983; Manuel v. City of Joliet, Ill., 580 U.S. 357 (2017).  To prevail on a claim under § 1983, a plaintiff must demonstrate that (1) the violation of a federal constitutional or statutory right; and (2) the violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  "The 'under color of law' requirement under § 1983 is the same as the Fourteenth Amendment's 'state action' requirement."  Chudacoff v. Univ. Med. Ctr. of S. Nev., 649 F.3d 1143, 1149 (9th Cir. 2011) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 928 (1982)).

The government has an "obligation to provide medical care" for those they confine, the failure of which can constitute an Eight Amendment violation.  Estelle v. Gamble, 429 U.S. 97, 103-05 (1976).  Because plaintiff is a civil detainee and not a prisoner, his medical claims arise under the Fourteenth Amendment rather than the Eighth Amendment.  Castro v. County of Los Angeles, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc).  In the Ninth Circuit, courts employ a

1    two-prong test for deliberate indifference:  (1) "a 'serious medical need' by demonstrating that

2    failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary

3    and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately

4    indifferent."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle, 429 U.S. at

5    104).  A medical need is "serious" if the failure to treat "could result in further significant injury

6    or the unnecessary and wanton infliction of pain."  Jett, 439 F.3d at 1096 (internal citations

7    omitted).

8          Previously, the deliberate indifference prong was evaluated using a subjective standard.

9    Gibson v. Cty. of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002), overruled on other grounds by

10   Castro, 833 F.3d at 1076.  After Castro, the Ninth Circuit held that an objective, not subjective,

11   deliberate indifference standard applies when evaluating a detainee's medical care claim.  Gordon

12   v. County of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (holding claims for violations of the

13   right to adequate medical care for pretrial detainees are evaluated under the objective standard set

14   forth in Castro).  Thus, to determine whether a defendant's response was deliberately indifferent,

15   the Ninth Circuit established a four part objective test:  (1) the defendant made an intentional

16   decision with respect to the conditions under which the plaintiff was confined; (2) those

17   conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not

18   take reasonable available measures to abate that risk, even though a reasonable official in the

19   circumstances would have appreciated the high degree of risk involved -- making the

20   consequences of the defendant's conduct obvious; and (4) by not taking such measures, the

21   defendant caused plaintiff's injuries.  Gordon, 888 F.3d at 1124-25.  In Gordon, the court solely

22   addressed the deliberate indifference standard and did not expressly eliminate the requirement

23   that plaintiffs demonstrate the existence of a serious medical need.  Id., passim; see also Narcisse

24   v. Tafesse, 2019 WL 4417635, at *4–5 (N.D. Cal. Sept. 16, 2019)

25          "A defendant can be liable even if he did not actually draw the inference that the plaintiff

26   was at a substantial risk of suffering serious harm, so long as a reasonable official in his

27   circumstances would have drawn that inference."  Russell v. Lumitap, 31 F.4th 729, 739 (9th Cir.

28   ////

8

1    2022).  The plaintiff must "prove more than negligence but less than subjective intent --

2    something akin to reckless disregard."  Id. (citing Castro, 833 F.3d at 1071).

3          Finally, the delay of, or interference with, medical treatment for a serious medical need,

4    can amount to deliberate indifference.  Jett, 439 F.3d at 1096 (citing McGuckin v. Smith, 974

5    F.2d 1050, 1059-60 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller,

6    104 F.3d 1133 (9th Cir. 1997) (en banc)).  The plaintiff must show harm resulting from the delay.

7    Jett, 439 F.3d at 1096; see also Stewart v. Aranas, 32 F.4th 1192, 1195 (9th Cir. 2022) (requiring

8    a prisoner to demonstrate that any alleged delay in medical care led to further injury).

9    The Parties' Evidence

10          Plaintiff relied on his verified complaint (ECF No. 1) and verified opposition (ECF No.

11   34).  Plaintiff provided no medical or other documentary evidence, or expert medical opinion in

12   support of his allegations.  In his complaint, plaintiff mentions a witness, inmate Ruben Martinez,

13   No. G63531 (ECF No. 1 at 4, 5), but no declaration or affidavit from Martinez was submitted.

14          Defendants provided plaintiff's medical records for the relevant and surrounding time

15   frames, plaintiff's requests for health care, declarations from defendants Prasad, Tapia and Read,

16   plaintiff's deposition, and the expert declaration of Dr. Feinberg.

17   Discussion

18          Initially, the undersigned observes that one of plaintiff's arguments is inapposite.  He

19   claims to "decline all invalid contracts and or summary judgment," and "attack[s] the subject

20   matter jurisdiction of the court," citing Rule 12(b) of the Federal Rules of Civil Procedure.  (ECF

21   No. 34 at 3.)  However, as argued by defendants, Rule 12(b) addresses what defenses a defendant

22   may raise by motion.  Here, defendants move for summary judgment under Rule 56, and there is

23   no issue of subject matter jurisdiction.  Fed. R. Civ. P. 56; 42 U.S.C. § 1983.

24          Second, both parties rely on the Eighth Amendment.  In his complaint, plaintiff confirms

25   he is a civil detainee, but alleges he suffered violations of his Eighth Amendment rights.  (ECF

26   No. 1 at 3.)  Defendants agree that plaintiff is a civil detainee, yet rely solely on Eighth

27   Amendment standards, arguing that a prison official is deliberately indifferent only if the official

28   "knows of and disregards an excessive risk to inmate health and safety."  (ECF No. 32-1 at 6)

9

1   (quoting <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation and internal quotation

2   marks omitted).  Despite such reliance, no additional briefing is required because the undersigned

3   finds that the court need not reach the issue of deliberate indifference.  This case hinges on

4   whether plaintiff demonstrated he suffered a serious medical need on September 18, 2021, and

5   whether he suffered an injury, either at the time of the incident or as a result of incident.  Further,

6   "the Eighth Amendment still provides a floor for the level of protection that [detainees] must

7   receive . . . and because the contours of the Eighth Amendment are more defined, Eighth

8   Amendment jurisprudence may provide helpful guidance as to the standards to be applied."

9   <u>Hubbs v. County of San Bernardino</u>, 538 F.Supp.2d 1254, 1266 (C.D. Cal. 2008).

10          Turning to the merits of defendants' motion, defendants adduce evidence that no

11  defendant was made aware of any serious medical condition and that plaintiff did not suffer any

12  serious medical condition on September 18, 2021.  Defendants contend they are entitled to

13  summary judgment on the grounds that there is no evidence that on September 18, 2021, plaintiff

14  had a serious medical need or suffered any harm as a result of defendants' actions or omissions.

15  (ECF No. 32-1.)  Following review of defendants' evidence, the undersigned finds that

16  defendants met their burden.  The burden now shifts to plaintiff.

17          In his verified opposition, plaintiff contends he is allowed to rely on his verified complaint

18  containing allegations based on his own personal knowledge, and then reiterates the allegations

19  from his verified complaint.  (ECF No. 34 at 3-4; 5-13.)

20          <u>No Evidence of Serious Medical Need</u>

21          Plaintiff provided no medical evidence or expert medical opinion to demonstrate that he

22  suffered a serious medical need on September 18, 2021.  "[U]ncorroborated and self-serving

23  testimony," without more, will not create a "genuine issue" of material fact precluding summary

24  judgment.  <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002).  "A

25  conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is

26  insufficient to create a genuine issue of material fact."  <u>Nilsson v. City of Mesa</u>, 503 F.3d 947,

27  952 n.2 (9th Cir. 2010) (citation omitted).  Plaintiff appears to allude to a heart condition, but he

28  provided no medical evidence demonstrating that he has a heart condition, such that a failure to

1  treat plaintiff's symptoms on September 18, 2021, "could result in further significant injury or the

2  unnecessary and wanton infliction of pain." Jett, 439 F.3d at 1096.

3      On the other hand, defendants provided the expert medical opinion of Dr. Feinberg who

4  reviewed plaintiff's medical records and found no evidence to support the claim that plaintiff had

5  a serious medical need on September 18, 2021. (ECF No. 32-5 at 8.)  On September 18, 2021,

6  plaintiff did not complete a health care request form 7362 seeking medical care for his alleged

7  medical need.  As supported by Dr. Feinberg's declaration, the medical records do not indicate

8  plaintiff raised his concerns in meetings with mental health or medical staff after September 18,

9  2021, such that the medical records demonstrate plaintiff suffered a serious medical need on

10  September 18, 2021.[2]

11      Plaintiff is entitled to rely on his own personal observations as to what took place on

12  September 18, 2021.  But under Rule 701 of the Federal Rules of Evidence, plaintiff, a layperson,

13  is not qualified to offer medical opinions or conclusions based solely on his symptoms.

14  Plaintiff's lay opinion that he had an urgent need for medical treatment on September 18, 2021, is

15  not admissible.  While plaintiff's verified claims were sufficient to state a claim at screening, at

16  summary judgment, only an expert witness with specialized knowledge may rebut defendants'

17  evidence that plaintiff did not have a serious medical need on September 18, 2021.  Fed. R. Evid.

18  702.  The undersigned finds that plaintiff fails to demonstrate, with competent evidence, that he

19  suffered from a serious medical need on September 18, 2021.

20      No Evidence of Harm or Injury

21      Further, plaintiff adduces no medical evidence that due to the acts or omissions of any

22  defendant on September 18, 2021, plaintiff sustained any injury.  Dr. Feinberg opines that "no

23  harm appears to have resulted from any alleged failure to summon medical assistance."  (ECF No.

24

25  [2]  In his opposition, plaintiff now claims he informed nonparty RN Joseph that plaintiff
    previously had chest pain, vomiting and difficulty breathing.  (ECF No. 34 at 13.)  Joseph
26  responded that Joseph would put plaintiff on the doctor's list but failed to do so.  (Id.)  However,
    plaintiff does not rebut Joseph's medical record stating that plaintiff did not present with such
27  symptoms on September 22, 2021 (ECF No. 32-5 at 51).  And nonparty Joseph's actions or
    inactions a few days after the incidents at issue here have no bearing on the liability of the named
28  defendants.

32-5 at 6.)  Taking as true that plaintiff experienced such symptoms on September 18, 2021, Dr. Feinberg found that the symptoms "appear to have either been so mild, or have resolved so quickly, that [plaintiff] was able to complete both his 602 and his original complaint on that same day." (ECF No. 32-5 at 8.)  Plaintiff adduced no competent evidence to the contrary.

"[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." Carey v. Piphus, 435 U.S. 247, 254 (1978).  For this reason, no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury.  Id. at 264; accord Memphis Community School Dist. v. Stachura, 477 U.S. 299, 307 (1986).  Because plaintiff provided no evidence of an actual injury based on alleged harm incurred on September 18, 2021, no compensatory damages are appropriate.

### Delay

Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002) (delays without significant harm do not constitute an Eighth Amendment violation); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (mere delay of surgery is insufficient absent evidence the denial was harmful).  Thus, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett, 439 F.3d at 1096.

Here, plaintiff adduces no evidence showing that any delay in being medically evaluated on September 18, 2021, caused him additional injury.  See Shapley, 766 F.2d at 407; Hallett, 296 F.3d at 746.  Taking as true that plaintiff suffered chest pains, shortness of breath, nausea and some vomiting on September 18, 2021, by the morning of September 22, 2021, RN Joseph physically examined plaintiff, who showed no signs of cardiovascular distress, and denied having chest pain, heart palpitations, shortness of breath, dizziness or lightheadedness.  (ECF No. 32-5 at 51.)  Plaintiff offered no competent medical evidence to refute the evidence produced by defendants and fails to demonstrate that he suffered an injury based on any delay in being seen by

////

12

1  medical staff.  Because plaintiff failed to demonstrate the delay was harmful, defendants are

2  entitled to summary judgment.

3      Finally, the cases cited by plaintiff are distinguishable on their facts.  (ECF No. 34 at 13-

4  15.)  For example, in Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000), the inmate was

5  very pale, sweating, complained of throbbing severe chest pain, had been vomiting all night, had

6  trouble breathing, and it was undisputed that both he and his roommate informed at least one

7  defendant that Sealock might be having a heart attack.  Id.  Later, medical evidence demonstrated

8  Sealock had suffered a major heart attack.  Id. at 1208.  Here, plaintiff adduced no evidence that

9  he was suffering a heart attack and declares he had "some vomiting."  (ECF No. 34 at 7.)  Despite

10 plaintiff's symptoms, he declares that he screamed "man down" for "almost an hour," "while

11 plaintiff continued to "kick and bang."  (ECF No. 34 at 9, 11.)  (Plaintiff's statements also raise

12 an inference that plaintiff may not have been suffering a serious medical issue because he was

13 able to scream, kick and bang.)  And unlike Sealock, plaintiff adduced no evidence of prior

14 cardiac issues, or any alleged heart or other injury incurred as a result of defendants' alleged

15 failure to obtain medical care for plaintiff on September 18, 2021.

16      Conclusion

17     Although the parties disagree about what took place on September 18, 2021, not every

18 factual dispute will defeat summary judgment.  "[T]he mere existence of some alleged factual

19 dispute between the parties will not defeat an otherwise properly supported motion for summary

20 judgment; the requirement is that there be no genuine issue of material fact."  Scott v. Harris, 550

21 U.S. 372, 380 (2007) (emphases in original, citation and quotation marks omitted).  "Where the

22 record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

23 there is no genuine issue for trial."  Id. (citation and quotation marks omitted).  Based on the lack

24 of evidence that plaintiff suffered a serious medical need on September 18, 2021, and plaintiff

25 sustained no injury as a result of any delay, no jury would find for plaintiff.  Accordingly,

26 defendants are entitled to summary judgment.

27 ////

28 ////

13

<u>Qualified Immunity</u>

As to each of the three moving defendants, the undersigned concludes that the record taken as a whole could not lead a rational trier of fact to find for plaintiff.  Therefore, there is no genuine issue for trial.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.  Because defendants are entitled to summary judgment on the merits of the Fourteenth Amendment claims, the court need not address the issue of qualified immunity.

<u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case.

Further, IT IS RECOMMENDED that defendants' motion for summary judgment (ECF No. 32) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 13, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/hill1727.msj

14